# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND



Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov

101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

March 31, 2023

TO ALL COUNSEL OF RECORD

Re:   *Brittany E. v. Kijakazi*
      Civil No. MJM-21-2976

Dear Counsel:

On November 19, 2021, Plaintiff Brittany E. commenced this civil action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA," "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF 11) and Defendant's Motion for Summary Judgment (ECF 16).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. (D. Md. 2021).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be denied, Defendant's motion will be granted, and the SSA's decision will be affirmed.

## I.   **Background**

Plaintiff filed her application for DIB and SSI on August 1, 2019, alleging disability beginning on April 20, 2018. (R. 15). Plaintiff's application was initially denied on November 4, 2019, and the initial determination was affirmed upon reconsideration on April 15, 2020. (*Id.*). Thereafter, Plaintiff requested an administrative hearing, and Administrative Law Judge ("ALJ") Leisha Self held a telephone hearing on March 18, 2021. (*Id.*). Plaintiff, who was represented by counsel, testified at the hearing. (R. 43–73). An impartial vocational expert also appeared and testified. (R. 74–84). Following the hearing, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI on April 28, 2021. (R. 15–31). On October 6, 2021, the Appeals Council denied

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 6).

Plaintiff's request for review of the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (R. 1). Plaintiff then filed this civil action seeking judicial review under 42 U.S.C. § 405(g).

## II.   **The SSA's Decision**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining Plaintiff's disability claims, the ALJ follows the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering all of the claimant's medically determinable impairments, regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

When mental impairments are alleged, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. The ALJ is required to rate the limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (known as "paragraph B criteria" for mental disorders). *Id.* § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The rating is based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). If the rating of a limitation is "none" or "mild," then the ALJ generally concludes that the mental impairment is not severe. *Id.* § 404.1520a(d)(1).

*Brittany E.. v. Kijakazi*
Civil No. MJM-21-2976
March 31, 2023
Page 3

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 20, 2018. (R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder, post-traumatic stress disorder ("PTSD"), anxiety, and substance abuse. (*Id.*). At step three, the ALJ found that in the context of substance use, Plaintiff's impairments met or medically equaled the severity of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). However, in the absence of Plaintiff's substance use disorder, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22). Then, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional work levels as defined in 20 C.F.R. 404.1567 and 416.967, except:

> [Plaintiff] is limited to understanding, remembering, and applying simple and routine instructions and attending and concentrating for extended periods with simple and routine tasks at work that [are] not at production pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others). She can occasionally interact with the general public, coworkers, and supervisors, can make simple work-related decisions, and can have few changes in the routine work setting.

(R. 24). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. 29). Lastly, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 30). Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act. (R. 31).

### III. Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

### IV. Discussion

Plaintiff's sole argument in challenging the ALJ's decision is that the ALJ failed to properly evaluate whether Plaintiff met or medically equaled the 12.04 Paragraph B Listing requirements, absent substance abuse. (Pl. Mem. 14). More specifically, Plaintiff points to the ALJ's determination of a less than marked limitation when "Plaintiff was abstinent from substance

use[,]" which, according to Plaintiff, was error warranting remand. (*Id.*).

"Under the special-technique regulation, if the ALJ determines that a mental impairment exists, [she] 'must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). . . .'" *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a(b)(1)). The ALJ is also required to "document 'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in 20 C.F.R. § 404.1520a(c)(3)." *Id.* (quoting 20 C.F.R. § 404.1520a(e)(4)). The four areas of functional limitation are: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). Understanding, remembering, or applying information "refers to the abilit[y] to learn, recall, and use information to perform work activities." 20 C.F.R. Part 404, Subpart P, Appendix 1. Interacting with others "refers to the abilit[y] to relate to and work with supervisors, co-workers, and the public." *Id.* Concentrating, persisting, or maintaining pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* Adapting or managing oneself "refers to the abilit[y] to regulate emotions, control behavior, and maintain well-being in a work setting." *Id.*

With each of the four areas of functional limitation, the ALJ must rate the degree of limitation using "the following five-point scale: [n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(3). No limitation or "none" means that the claimant can function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1. Mild limitation means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis, is slightly limited." *Id.* Moderate limitation means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis, is fair." *Id.* Marked limitation means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis, is seriously limited." *Id.* Extreme limitation means that the claimant cannot function "independently, appropriately, effectively, and on a sustained basis." *Id.* Lastly, "[t]o satisfy the paragraph B criteria," the areas of functional limitation "must result in *extreme limitation of one, or marked limitation of two*, paragraph B areas of mental functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added).

### A. Special Technique in the Context of Plaintiff's Drug Use

Here, the ALJ determined that Plaintiff suffered from the following mental impairments: bipolar disorder, an unspecified depressive disorder, PTSD, social anxiety disorder, and severe substance abuse disorders. (R. 20) (citing R. 474). Next, the ALJ was required to substantiate those findings with "symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1520a. The ALJ did so by citing Plaintiff's symptoms: a depressed mood, sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating, and suicidal thoughts. (R. 20); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Symptoms and signs may include…*feelings of hopelessness or guilt*, suicidal ideation, a clinically significant change in body weight or appetite, *sleep disturbances*….") (emphasis added). In identifying these symptoms, the ALJ relied on several sources within the

*Brittany E.. v. Kijakazi*
Civil No. MJM-21-2976
March 31, 2023
Page 5

record to establish how the symptoms related to the impairments, which in turn demonstrated how the severity of the impairments met the Listing 12.04 criteria. (*Id.*). The sources were: Plaintiff's testimony, (R. 48–49); diagnoses from Plaintiff's evaluation at Port Recovery Center, one of Plaintiff's treatment centers, (R. 474); a psychosocial evaluation at Sheppard Pratt Health System, another of Plaintiff's treatment centers, (R. 427); and a note authored by a psychiatrist, (R. 437). Given the several sources within the record that support the ALJ's mental impairment findings, the Court concludes that these findings are supported by substantial evidence. *See generally Hasan v. Berryhill*, Civ. No. ADC-16-3928 2017 WL 4277597, at *8 (D. Md. Sept. 25, 2017) (holding that because the ALJ cited Plaintiff's testimony, two physicians' testimony, treating psychiatrists, and Plaintiff's brother, substantial evidence supported ALJ's conclusions).

Turning to the four areas of functional limitation, the ALJ found that Plaintiff had a marked limitation in concentrating, persisting, or maintaining pace, and a marked limitation in adapting or managing oneself. (R. 20). The ALJ then concluded that "in the context of drug abuse," the claimant met the requirements of Listing 12.04. (R. 22). According to the ALJ, the record indicated Plaintiff's significant difficulty focusing and concentrating. (R. 20). The ALJ cited Plaintiff's hearing testimony, (R. 47), and Plaintiff's initial evaluation at the Mountain Manor Treatment Center, one of Plaintiff's treatment centers. (R. 21). Additionally, Plaintiff reported having trouble focusing at her last job as a title clerk. (*Id.*) (citing R. 510). Given Plaintiff's struggles with maintaining focus, a reasonable mind could conclude that "in the context of drug abuse," Plaintiff suffered a marked limitation, and therefore the ALJ's finding was supported by substantial evidence.

Similarly, the ALJ found that, "in the context of drug abuse," Plaintiff suffered a marked limitation in adapting or managing herself. (R. 22). The ALJ supported such a finding by referencing Plaintiff's homelessness periods (R. 855), feelings of hopelessness and worthlessness, overpowering emotions (R. 441), suicidal thoughts (R. 441; R. 855), and arrest for burglary. (R. 458). All of these occurred during periods when Plaintiff was not sober. (R. 22). These findings could reasonably support a conclusion that Plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis, is seriously limited" due to Plaintiff's struggles "to regulate emotions, control behavior, and maintain well-being" during her drug use. 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, the ALJ's marked limitation finding, "in the context of drug abuse," for adapting or managing oneself was supported by substantial evidence.

### B. Special Technique in the Context of Plaintiff's Sobriety

An additional step is added to the step three inquiry when there is medical evidence that the claimant has an alcohol or drug addiction ("DAA"). *Hood v. Astrue*, Civ. No. SKG-08-2240, 2009 WL 4944838, at *3 (D. Md. Dec. 14, 2009). "A claimant has DAA only if he or she has a medically determinable Substance Use Disorder." SSR 13-2p. This determination is the same as for all other medically determinable physical or mental impairments, requiring "objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that support[] a finding that a claimant has DAA." *Id.* The Act provides that a claimant is not disabled under the Act if DAA would be a material factor to the Commissioner's determination

that the claimant is disabled. SSR 13-2P, 2013 WL 621536, at *2 (Feb. 20, 2013). "The conditional language of the regulation requires a determination that the person is disabled *before* the ALJ considers whether the claimant's [DAA] contributes to the disabling condition." *Eiker v. Astrue*, Civ. No. A. CBD-11-3584, 2013 WL 2149755, at *9 (D. Md. May 15, 2013) (emphasis added). "The regulations specify that [DAA] is a contributing factor material to a disability determination if an individual would not be disabled if he stopped using alcohol or drugs." *Hasan*, 2017 WL 4277597, at *7 (quoting *Mitchell v. Comm'r of the Soc. Sec. Admin.*, 182 F.3d 272, 274 n.2 (4th Cir. 1999)); 20 C.F.R. § 404.1535(b)(1). Thus, the ALJ must evaluate "whether any of the claimant's mental and physical limitations upon which the ALJ based the determination of disability would continue if the claimant abstained from alcohol or drug use." *Hood*, 2009 WL 4944838, at *6 (citing 20 C.F.R. § 404.1535(b)(2)). As with steps one through four of the sequential evaluation process, "the claimant bears the burden of proof" on the DAA materiality issue. *Hasan*, 2017 WL 4277597 *at 7; SSR 13-2P, at *4.

Finally, the ALJ determines whether "any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2). If the remaining limitations are not disabling, then DAA is a "contributing factor material to determining disability." 20 C.F.R. § 404.1535(b)(2)(i). In contrast, if the remaining limitations are disabling, the claimant will be found to be "disabled independent of [the claimant's DAA,] and the [ALJ] will find that [DAA] is not a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(ii). In making this determination, the ALJ "must provide sufficient information in their determination or decision that explains the rationale supporting their determination of the materiality of [DAA] so that a subsequent reviewer considering all of the evidence in the case record is able to understand that basis for the materiality finding and the determination of whether the claimant is disabled." SSR 13–2p, at *2.

Here, the ALJ determined that Plaintiff had DAA in the form of severe substance abuse disorders, including heroin and cocaine abuse. (R. 20) (citing R. 461). This finding is consistent with other medical reports in the record. (*See, e.g.*, R. 635–36). Consequently, the ALJ's conclusion that Plaintiff suffered from a substance use disorder and had DAA was supported by substantial evidence. Further, the ALJ found that Plaintiff was disabled at step three of the sequential evaluation, that is, that Plaintiff's severe impairments met the Listing 12.04 requirements. *See* Section IV.A *supra*. Therefore, the first step in the DAA materiality analysis was satisfied. *See Eiker*, 2013 WL 2149755, at *9 (noting that the ALJ must determine whether the claimant is disabled before considering whether the claimant's DAA contributed to the disabling condition).

The ALJ then found that absent the substance use disorder, "the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…." (R. 21). Hence, according to the ALJ, Plaintiff, when not using drugs, had "at most a moderate limitation" in understanding, remembering, or applying information; "a moderate limitation" in interacting with others; "a moderate limitation" in concentrating, persisting, or maintaining pace; and "a moderate limitation" in adapting or managing oneself.

With regard to understanding, remembering, or applying information, the ALJ cited various sources within the record to support her "at most a moderate limitation" finding. Among these sources was Plaintiff's hearing testimony, where Plaintiff testified that she graduated high school and community college without special education. (R. 22) (citing R. 44). The ALJ also highlighted that Plaintiff was coherent during her testimony, attended groups, and was involved in group therapy. (*Id.*). These were all times when Plaintiff was clean. (*Id.*). Given Plaintiff's competency, the ALJ could reasonably conclude that Plaintiff's ability to understand, remember, or apply information was not seriously limited. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (identifying understanding and learning terms and instructions as examples of the nature of understanding, remembering, or applying information). Comparably, other evidence in the record not referenced by the ALJ supported the ALJ's finding. For example, one of Plaintiff's mental status examinations at Mountain Manor—one of Plaintiff's treatment centers—yielded a "good comprehension" result. (R. 516). Likewise, one of Plaintiff's mental status examinations at Powell Recovery Center—another of Plaintiff's treatment centers—yielded an "intact memory" result. (R. 1125). Both exams were taken while Plaintiff was not using drugs. Substantial evidence supports a finding that Plaintiff's limitation in this area is fair or moderate.

The next functional limitation area assesses interaction with others. The ALJ deemed this to be a moderate limitation. (R. 23). In her analysis, the ALJ first acknowledged Plaintiff's reports of irritability and angry outbursts. (*Id.*). Plaintiff also stated during her hearing testimony that when she was sober, she "stopped hanging around certain people[,]" became "anti-social" and felt "lonely[.]" (R. 56). The ALJ still found a moderate limitation, identifying sources in the record where Plaintiff stated that she enjoyed shopping and "going out to eat," which required interacting with others. (R. 22) (citing R. 457). In like manner, the ALJ pointed to Plaintiff engaging in group therapy and living with a friend during times of Plaintiff's sobriety, which support the ALJ's moderate limitation finding. (*Id.*). Other sources in the record further illustrate this point. For example, Plaintiff stated that she "gets along with her brother and sister[,]" which requires interacting with others. (R. 457). Also, while at Mountain Manor, Plaintiff listed "going to the movies" as one of her "Hobbies/Interests/Leisure Activities." (R. 514). Thus, a reasonable mind could accept the evidence in support of the ALJ's finding of a moderate limitation in interacting with others, when Plaintiff abstained from drugs. The ALJ's finding was supported by substantial evidence.

The ALJ also found Plaintiff to have a moderate limitation in concentrating, persisting, or maintaining pace when Plaintiff was sober. (R. 23). The ALJ determined that Plaintiff had "normal memory, attention, cognition, and no signs of psychosis." (*Id.*) The record supported this determination. (*See, e.g.*, R. 546, reporting that Plaintiff's cognitive functioning and fund of knowledge were age appropriate; R. 611–705, describing Plaintiff's cognitive functioning, orientation, and memory as "normal, and intact[,]" and identifying "no hyperactive or attentional difficulties"). Accordingly, evidence cited by the ALJ was in line with the statutory requirements. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 ("How you manifest this area of mental functioning [—concentrating, persisting, or maintaining pace—] and your limitations in using it depends, in part, on your age."). Additionally, during her second time at Powell Recovery Center in late 2020

and early 2021, Plaintiff took several mental status examinations, which yielded results for "good concentration and memory." (R. 1130, 1137, 1143, 1150). These examinations were taken over a seven-month period when Plaintiff was sober. (*Id.*). The ALJ's moderate limitation finding was supported by substantial evidence.

The ALJ also considered evidence that might have supported a higher degree of functional limitation in concentrating, persisting, or maintaining pace during times of sobriety. For example, when she was sober during rehabilitation with Port Recovery on September 11 and 12, 2018, Plaintiff reported difficulty concentrating and excessive worrying and was found to be "[i]ncreasingly distractable, easily drawn to unimportant or irrelevant stimuli." (R. 469, 478). However, approximately two weeks later, as her substance abuse treatment continued, Plaintiff's cognitive functioning and fund of knowledge were found to be age appropriate, she could "remember recent and remote events[,]" she was "oriented in time and place[,]" she was "able to think abstractly[,]" "[h]er speech reveal[ed] rapid rate and increased volume," and "[t]here were no signs of psychotic process" or indications of any hallucinations, delusions, or thought disorder. (R. 546). By December 2018, Port Recovery reported that Plaintiff's cognitive functioning, orientation, and memory were "normal and intact[,]" found "no hyperactive or attentional difficulties[,]" reported that that Plaintiff's speech showed "no abnormalities of rate, volume, or articulation[,]" found that "her language skills [were] intact." (R. 616). The ALJ also cited a later record from Shepard Pratt noting improvement in Plaintiff's mood and hallucinations. (R. 23, citing R. 856). This evidence supports the ALJ's finding that Plaintiff showed regular improvement in concentrating, persisting, or maintaining pace when she was in substance abuse treatment. Thus, substantial evidence supports the ALJ's finding of a moderate limitation in concentrating, persisting, or maintaining pace in the absence of substance abuse. *See generally Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.").

Plaintiff argues that the ALJ ignored medical records from Port Recovery Center indicating that Plaintiff was experienced auditory hallucinations while abstaining from drugs in the fall of 2018. (Pl. Mem. 17). However, the ALJ did cite the Port Recovery Center records, and, although some of the records indicate auditory hallucinations, others indicate that Plaintiff frequently did not experience hallucinations. (R. 23, citing R. 524, 529, 538, 546, 572, 594, 599, 606). The ALJ specifically pointed out that, what auditory hallucinations Plaintiff suffered in 2018, consisted of "only non-threatening voices at night, which did not concern her[.]" (R. 21, citing R. 455–495, 524–610). The ALJ also cited records from Sheppard Pratt in 2020, which reflect improvement in Plaintiff's mental health symptoms, including hallucinations. (R. 23–24, citing R. 856). Both sets of records support the finding that, during periods of sobriety, Plaintiff had "normal memory, attention, cognition, and no signs of psychosis." (R. 23, citing R. 524–609).

Sources cited by the ALJ also provide substantial evidence in support of her finding that Plaintiff suffered a moderate limitation in adapting or managing oneself while abstaining from drug use. During her time at Powell Recovery Center, Plaintiff was reported to be in general compliance with her treatment. (R. 1135). Several records reflect Plaintiff's commitment to sobriety and self-care. (*See, e.g.*, R. 459, 472, 641). These reports are consonant with the statutory

examples for adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (identifying "setting realistic goals [and] making plans for yourself independently of others" as examples of factors assessed under this area of functional limitation). Additionally, the ALJ found that, when sober and in drug treatment, Plaintiff exhibited "normal insight and judgment," a "calm[] and cooperative" demeanor, no anxiety signs, and stable mental status examinations. (R. 23). These findings are supported by the record. (*See, e.g.*, R. 632). Because this Court finds substantial evidence to support the ALJ's conclusion that, during times Plaintiff abstained from substance use, Plaintiff suffered only a moderate limitation in adapting or managing oneself, the ALJ's decision will be upheld. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Judicial review of a final decision regarding disability benefits under the [Act]…is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied.").

## V.     Conclusion

Given that there is substantial evidence to support the ALJ's findings, and the findings were reached through the application of the correct legal standards, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted. The SSA's decision will be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

A separate Order will follow.

Sincerely,

/S/

Matthew J. Maddox
United States Magistrate Judge